UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| v. § | |
| ROBERT GEORGE ARWADY § | CRIM. NO. H-14-90 |
| and § | |
| RICHARD PAUL MEDRANO, § | |
| Defendants § | |

UNITED STATES' RESPONSE
TO DEFENDANTS' (i) MOTION (Doc. 39) TO DISMISS COUNTS
TWO THROUGH SIX and (ii) ACCOMPANYING MEMORANDUM (Doc. 40)

Introduction.

1. The defendants move to dismiss Counts Two through Six of the Indictment for failure to state an offense. Alternatively, the defendants ask the Court to compel the United States to elect among purportedly multiplicitous counts. This response addresses the defendants' motion (Doc. 39) and their memorandum (Doc. 40). Their motion to dismiss should be denied.

Discussion.

Summary of defendants' claims.

2. The defendants argue that Counts Two through Six are deficient in four respects:

   a. First, that the counts fail to allege that the defendants acted "as a regular course of trade or livelihood";

   b. second, that the counts fail to allege that the defendants acted with the principal objective of livelihood and profit;

   c. third, that the counts fail to allege that the defendants repetitively purchased and resold firearms; and

   d. that the counts allege that the defendants acted knowingly instead of willfully, in other words, that the counts allege the wrong state of mind.

3. The defendants' fourth point is well-taken. The United States will present a proposed superseding indictment to the grand jury in advance of trial and ask that it insert

different states of mind into the superseding indictment, thereby mooting the defendants' fourth point prior to trial.

    4.    The defendants' three remaining points are discussed below, beginning with a summary of relevant legal standards.

<u>Applicable elements and definitions</u>.

    5.    The elements of 18 U.S.C. § 922(a)(1)(A), dealing in firearms without a license, are:

| | |
|---|---|
| *First*: | That the defendant was a person engaged in the business of selling firearms at wholesale or retail on the dates listed in the Indictment; |
| *Second*: | That the defendant engaged in such business without a license issued under federal law; and |
| *Third*: | That the defendant did so willfully, that is, that the defendant was dealing in firearms with knowledge that his conduct was unlawful. |

    6.    The elements of 18 U.S.C. § 922(a)(1)(A), aiding and abetting, are:

| | |
|---|---|
| *First*: | That the offense of dealing in firearms without a license was committed by some person; |
| *Second*: | That the defendant associated with the criminal venture; |
| *Third*: | That the defendant purposefully participated in the criminal venture; and |
| *Fourth*: | That the defendant sought by action to make that venture successful. |

    7.    The term "dealer" is defined in 18 U.S.C. § 921(a)(11):

The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

    8.    According to 18 U.S.C. § 921(a)(21), The term "engaged in the business" means:

(C) as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes

time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

9. According to 18 U.S.C. § 921(a)(22), The term "with the principal objective of livelihood and profit" means that

> the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and the pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism . . .

10. The Fifth Circuit analyzed the meaning of being "engaged in the business" of dealing in firearms for the first time in *U.S. v. Brenner*, 2012 WL 1499753, *3 (5th Cir. 2012) (unpublished). The court's analysis tracked the reasoning of the Third Circuit in *U.S. v. Tyson*, 653 F.3d 192, 200 (3rd Cir. 2011):

> . . . the defendant engages in the business of dealing in firearms when his "principal motivation is economic" and he "pursues this objective through the repetitive purchase and resale of firearms" . . . the jury must examine all circumstances surrounding the transaction, without the aid of a "bright line rule" . . . Relevant circumstances include: "the quantity and frequency of sales"; the "location of the sales"; "conditions under which the sales occurred"; "defendant's behavior before, during, and after the sales"; "the price charged"; "the characteristics of the firearms sold"; and, "the intent of the seller at the time of the sales." *Tyson*, 653 F.3d at 201 (citations omitted).

11. In *Brenner*, the circumstances included

> . . . *inter alia*, the number of transactions in which Brenner engaged in 2009 was greater than, or equivalent to, those he recorded for several of the previous years up to early 2008 when he operated as a licensed dealer; he acquired all of the indictment-charged firearms after his license had not been renewed; he made approximately 90% profit on the indictment-charged sales; they took place at his residence, the same location where he operated when he was a licensed firearms dealer; the sales were secretive, cash only, and lacking documentation; and Brenner frequently referred to firearms that were "coming in"

and "brand new," thus referring to a source of firearms other than his personal collection." *Brenner*, *Id.*, at *3.

Given those facts, the court concluded that "a reasonable juror could have found beyond a reasonable doubt that Brenner was engaged in the business of dealing in firearms, not liquidating his firearms collection." *Id.*

<u>Defendants' course of conduct</u>.

12. Here, the facts differ from those in *Brenner*, but they lead to the same conclusion – that defendants Arwady and Medrano were dealing in firearms without a license. Defendants Arwady and Medrano conducted business from the Ammo Dump's premises and maintained the appearance of an active firearms dealership. They touted firearms for sale by The Ammo Dump and Arwady Sales Inc., not by an individual from his personal collection. The Ammo Dump advertised extensively on the GunsAmerica.com website, listing firearms for sale in its name and not that of an individual. Each listing fraudulently represented that the Ammo Dump was a federal firearms licensee.

13. From June 27, 2009 until July 1, 2009, the number of the Ammo Dump's active firearms listings increased from 21 to 41 firearms for sale. The Ammo Dump's own website posted, "We carry a full range of firearms, accessories and special order items. At this time, we currently offer such a large variety of inventory and selections changes daily, that we are unable to list all we have to offer." Both of those circumstances reinforce the conclusion that the Ammo Dump was actively acquiring and selling firearms from sources other than a static personal collection. The evidence bears out that conclusion.

14. Five of the seven firearms identified in the indictment were consigned to Mr. Arwady for sale by a third party. The defendants acquired the two remaining firearms from a Dallas firearms dealer, because they lacked inventory necessary to cover sales for which they

had already been paid. The defendants can not argue that any of the firearms identified in the indictment came from Mr. Arwady's personal collection. The seven sales occurred as a result of the defendants' engaging in the business of dealing in firearms, not because they were liquidating a personal collection.

Defendants' first three objections to the indictment.

15.    There is no precedent for the defendants' demand that definitions should be written into the indictment. Definitions, such as those included in paragraphs 5 - 9, above, are part of the jury charge, not the indictment. The defendants tacitly acknowledge as much, *see* 40 Doc. 4 ("Indeed, the Fifth Circuit's model jury instructions defines [*sic*] 'engaged in the business' by tracking the specific language of Sections 921(a)(21) and (22).").

Multiplicitous counts.

16.    Defendants mistakenly urge the Court to require the United States to make certain elections, based on a theory of multiplicity (which may include duplicity as well) among Counts Two through Six. Their argument is without merit and should be denied.

17.    An unpublished order issued by a District Court in this Circuit dealt persuasively with multiplicity and duplicity. *U.S. v. Pearson*, 2010 WL 2105998 (S.D. Miss.). There, the defendant claimed that Count 1 was duplicitous in that it charged conspiracy and aiding and abetting, and he claimed that counts 1 and 12 were multiplicitous because they punished the same conduct. *Id.*, at *1.

> The Court first finds that the issue of duplicity is unfounded. "An indictment may be duplicitous if it joins in a single count two or more distinct offenses." (citations omitted) Pearson does not cite any Fifth Circuit law in support of his argument. In contrast, the government cites *U.S. v. Bullock*, in which the Fifth Circuit held that the objection to charging violations of 18 U.S.C.A. § 2 and 18 U.S.C.A. § 641 in the same count was not well taken. *U.S. v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). The Fifth Circuit stated: "Count Two is said to be defective for multiplicity, [the district court inserted a footnote

stating that the Fifth Circuit clearly meant that the issue raised was one of duplicity, the charging of two separate offenses in a single count, not multiplicity, the charging of the same offense in multiple counts in violation of the principles of Double Jeopardy] in that it charges violations of both 18 U.S.C.A. § 2 and 18 U.S.C.A. § 641. The objection is not well-taken. 18 U.S.C.A. § 2, which makes he who aids or abets the commission of an offense punishable as a principal, is an alternative charge in every count, whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *Pearson*, *Id.*, at *1.

18. The district court reasoned that including aiding and abetting in the same count as conspiracy to commit Medicare fraud was not duplicitous. *Id.* That reasoning applies to the analogous facts in this case as well.

19. Concerning multiplicity, the *Pearson* court again reviewed Fifth Circuit precedent:

> The Fifth Circuit has clearly stated that "[o]ne act may violate two or more statutes and constitute independent offenses." *United States v. Maggitt*, 784 F.2d 590, 599 (5th Cir. 1986). "The fact that a defendant is charged twice in an indictment for the same conduct does not necessarily mean he is being charged with the same offense." *Id. Pearson*, *Id.*, at *1.

20. In *Pearson*, the court concluded that counts 1 and 12, which apparently charged the same conduct, were not multiplicitous. Here, there is even less concern, because Counts Two through Six charge separate and discrete violations that arose on different dates, involved different firearms, different sales transactions, and different purchasers.

Conclusion.

For the above reasons, the defendants' motion should be denied.

          Respectfully submitted,

          KENNETH MAGIDSON
          United States Attorney


     By:  */s/ Michael B. Kusin*
          MICHAEL B. KUSIN
          Assistant United States Attorney
          (713) 567-9389

## CERTIFICATE OF SERVICE

  This is to certify that on the 21st day of January, 2015, the United States' response to Mr. Arwady's motion to dismiss counts two through six was delivered to Robert E. Sanders, Joseph M. Grant, and Charles Flood, counsel for defendants Arwady and Medrano, either by electronic filing, e-mail, mail, or facsimile; or was hand delivered.

          */s/ Michael B. Kusin*
          MICHAEL B. KUSIN
          Assistant United States Attorney